## TOWN OF WATONGA v. MORRISON, Adm'r.

No. 9622—Opinion Filed March 30, 1920.

Rehearing Denied April 27, 1920.

(Syllabus by the Court.)

**1. Negligence—Elements—Petition.**

In every case involving actionable negligence, there are of necessity three constituent elements to its existence:  First, the existence of a duty on the part of the person complained against to protect the complainant from the injury of which he complains; second, the failure of the defendant to perform that duty; third, injury to the plaintiff resulting from such failure of the defendant; and when a petition affirmatively shows these three elements, it is good as against a demurrer.

**2. Trial—Demurrer to Evidence.**

Where the evidence is sufficient to tend reasonably to support the allegations of a petition that states a cause of action, a demurrer to such evidence should be overruled.

**3. Negligence—Question for Court or Jury.**

Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for

the jury. And it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.

**4. Appeal and Error—Review—Sufficiency of Evidence.**

In a civil action triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

Error from District Court, Blaine County; W. M. Bowles, Assigned Judge.

Action by J. J. Morrison, administrator of the estate of J. O. Warrington, deceased, against the town of Watonga. Judgment for plaintiff, and defendant brings error. Affirmed.

Seymour Foose, R. C. Brown, and J. P. Wishard, for plaintiff in error.

H. N. Boardman and R. J. Puderbaugh, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Blaine county.

On the 19th of July, 1916, J. J. Morrison, administrator of the estate of J. O. Warrington, deceased, commenced an action against the defendant, town of Watonga, to recover the sum of $50,000 as damages for the wrongful death of said J. O. Warrington on account of the negligence of the defendant.

The allegations of the plaintiff's petition that are here essential were as follows:

"That on or about the 15th day of May, A. D. 1916, and at a time when the said support and guy wires of the said Watonga Telephone Company were and had been for a number of years in the position and condition as hereinbefore described, and at a time when the said defendant herein had had full and complete knowledge thereof, the said defendant in the exercise of its corporate functions, rights, and privileges, negligently and carelessly and improperly erected and thereafter and all time mentioned herein, maintained, owned and controlled certain poles along and upon the east side of Noble avenue of said incorporated town of Watonga at the intersection of said Noble avenue and said Ninth street, and upon said poles then and there negligently, carelessly and improperly erected and placed and at all times mentioned herein continued to negligently, carelessly and improperly own, control and maintain a certain primary wire for the purpose of conveying and conducting electricity from the dynamos and power plant of the defendant herein to the several residents, citizens and inhabitants of the said incorporated town of Watonga, and vicinity, and that said primary wire as aforesaid, was upon the said 23rd day of July, A. D. 1914, carelessly and negligently and improperly strung and maintained by the defendant herein from a pole at\the southeast corner of the intersection of said Noble avenue with said Ninth street to a pole approximately twenty-five feet north of the northeast corner of the intersection of said Noble avenue with said Ninth street, and said primary wire being then and there and for many months prior thereto negligently, carelessly and improperly strung and maintained above the said telephone wire heretofore referred to as being maintained, owned and controlled by the said Watonga Telephone Company, a corporation, and strung upon the poles and across Noble avenue as hereinbefore indicated.

"That on the 23rd day of July, A. D. 1914, and for a long time prior thereto the defendant herein negligently and carelessly without due and proper regard for the welfare of persons using the streets and highways of said incorporated town of Watonga, allowed, suffered and permitted the said primary wire as aforesaid and then and there maintained by the defendant upon the poles as aforesaid and across Ninth street to become loose and in a sagging condition and to fall upon and rub against the telephone support or guy wire to such an extent and for such a length of time as to cause the insulation upon said primary wire to become entirely worn and destroyed at a point and place where the same touched and came in contact with the said telephone wire as aforesaid, all of which said condition existed and was known by the defendant herein to exist on and prior to the said 23rd day of July, 1914.

"That on the said 23rd day of July, 1914, at approximately between the hours of 7:30 and 8:30 o'clock p. m., and at a time when the said defendant herein then and there was cognizant of and had full knowledge of the condition of all of said wire as hereinbefore set forth, the said defendant having failed, refused and neglected to repair or replace the insulation worn from the said primary wire as aforesaid by its contact with the said telephone wire, and also having failed, refused and neglected to furnish or cause to be furnished a strain insulator or other similar device for either of said supporting guy wires of said Watonga Telephone Company, did then and there with full and complete knowledge of the position, situation and condition of said contact between the said telephone wire as aforesaid and the said primary wire caused its dynamos and power plant to be negligently and carelessly operated and a current of electricity generated and transferred and conveyed over said primary wire as aforesaid, and upon and into said telephone wire as aforesaid, thereby charging the same with a high, dangerous and deadly charge of electricity causing the same to be conveyed from dynamos and power plant of the defendant within said incorporated town of Watonga, by, through and over said primary wires to the ground and the surface of the earth at the point where said supporting pole guy wire entered the ground as hereinbefore indicated and by reason of which

both of said telephone wires as aforesaid and the ground and immediate surface of the earth where said telephone wires entered the ground became then and there charged with a high, dangerous and deadly charge of electricity.

"That on said 23rd day of July, 1914, between the hours of 8:00 and 9:00 o'clock p. m., and at a time when the said telephone wires and the said ground connected therewith were so charged with a high, deadly, and dangerous charge of electricity by reason of the operation of the defendant's electric light and power plant as aforesaid, the said J. O. Warrington, while walking along and upon said Ninth street and upon a path then and there and for many years prior thereto, used and permitted to be used by the defendant herein for foot passengers upon the north side of Ninth street, and while so walking in an easterly direction as aforesaid, stepped upon the ground and surface of the earth so charged with the said electricity and came in contact with said telephone supporting pole guy wire as aforesaid so charged with said electricity and from which contact with said surface of the earth and said wire said J. O. Warrington did then and there receive into his body a deadly current of electricity and from which he did then and there immediately die."

The defendant answered, first, by a general denial; second, that the deceased received the injuries and met his death as a direct and proximate result of what is, in law, denominated "an act of God"; third, that the deceased met his death as a result of his own negligence and want of care on his part which resulted in his death.

The plaintiff's reply consisted of a general denial. The trial resulted in a verdict in favor of the plaintiff for the sum of $5,000, upon which verdict the trial court rendered a judgment in said sum.

The defendant regularly and in due time commenced this proceeding in error to reverse the judgment of the trial court.

The defendant makes 29 separate assignments of error in its petition in error. Its first assignment of error is that "the court erred in overuling the defendant's motion for a new trial"; the second is, "the court erred in overruling the defendant's demurrer to the plaintiff's petition." There is no merit in the latter contention.

The plaintiff's petition by sufficient and apt averments and allegations charges the defendant with the negligent erection, construction, operation, and maintenance of its electric light poles, guy wires, and primary wires, charging that by reason of the fault and negligence of the defendant in these respects the deceased came in contact with an uninsulated guy wire charged with a deadly current of electricity which directly caused his death, charging, in effect, the three concurring elements: First, the existence of a duty on the part of the defendant to protect the deceased from the injury which caused his death; second, the failure of the defendant to perform that duty; and, third, the death resulting from such failure—which rendered the petition good against a demurrer. Lisle v. Anderson, 61 Oklahoma, 159 Pac. 278; Chicago, R. I. & P. R. Co. v. Boston, 59 Okla. 109, 159 Pac. 250.

The defendant's third specification of error is that:

"The trial court erred in overruling the demurrer of the defendant to the evidence of the plaintiff."

Miss Fannie Louise Warrington, sister of the deceased, who was an eye-witness to the tragedy by which the defendant lost his life, testified in behalf of the plaintiff, in substance, as follows: That at the time of the tragedy her brother, Otis, his wife, Mable, and the little brother of the witness and the witness were going from the home of her brother along the street to the home of the plaintiff, who was the father-in-law of her brother; that just after they had crossed the street and were in the path between the street and the home of a Mrs. Bruton, the latter was standing on the side of the path and spoke to her brother, saying: "See Mr. Warrington, what is this?"

"I turned and saw my brother standing very erect, both arms outstretched, head backward, and leaning a little to the right. It looked as if his hands were against the wire, because he was leaning just a little that way. Her speaking, my turning and seeing my brother, were instantaneous; I took hold of my brother's left arm with my right hand; I never knew anything after that. When I was coming to I noticed Mrs. Bruton on the ground to my left; saw her begin to move her arms gradually and then I pulled my brother's body up in my arms and pulled him some distance; his head was thrown back, mouth open, face pallid, when I saw him standing. The first time that I realized that there was any danger was when I touched him: I realized I was being electrocuted, as I had experienced electricity once before just fooling with a battery. Prior to touching him, I did not see any flame or sparks coming from the ground or any evidence of danger; did not hear my brother or any one else reply to Mrs. Bruton when she spoke to my brother."

Mrs. Mable Warrington, wife of the deceased, testified, in substance and in detail, the same as the witness Miss Warrington, up to the point (as to the facts) of the tragedy, concerning which she testified that she first noticed Mrs. Bruton standing there when she

spoke to her husband, saying: "Mr. Warrington, what do you suppose this is?"

"At that time I had hold of my husband's arm. I did not know to what she referred, as I had not observed the wire running from the pole into the ground. My husband did not answer her or say anything; he stepped forward just a little. I don't know how many steps, and the next thing I observed was his rigid body; his back was to me; my attention was called to him by a peculiar sound that came from his body; it sounded just like his bones were cracking; his head was erect; I remember seeing Mrs. Bruton, Fannie, and Otis (deceased) all stiffened; they all' fell, then I ran screaming."

The accident occurred after dark; the lights were on. The testimony disclosed that there had been a severe windstorm accompanied by some rain during that afternoon, trees were blown down and branches blown from others which had lodged on or against the electric and telephone wires interfering more or less with the operation of both, which facts were brought home to the servants of the defendant in charge of the light plant; and that some minor repairs of the line out in the city had been made in response to calls 'phoned in and some tests of the line had been made at the plant by the night man and the superintendent or manager at around 6:00 p. m., and about that time the latter directed the night man to throw on the current, left, and went home to supper, and on his way stopped and made some repairs of a wire, went on home, and was eating his supper at the time of the accident.

We cannot agree with counsel in this contention. We think the trial court properly overruled the defendant's demurrer to the evidence of the plaintiff. As was said by this court in the case of Means v. Callison, 28 Okla. 737:

"Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting questions of negligence, such question is for the jury." San Bois Coal Co. v. Janeway, 22 Okla. 425; St. Louis & S. F. R. Co. v. Williams, 31 Okla. 450, 122 Pac. 152; Revel et al. v. Pruitt, 42 Okla. 696, 142 Pac. 1019; St. Louis & S. F. R. Co. v. Hart, 45 Okla. 659; 46 Pac. 436.

The defendant's 4th specification of error is:

"The trial court erred in allowing Mable Warrington, surviving widow of the deceased, to testify as a witness."

Citing in support of this contention, Rev. Laws 1910, sec. 5049. The provision of this statute is not applicable. The witness was not a party to the action, and no part of her testimony involved any transaction or conversation had personally by the witness with the deceased, and this is not an action where the party adverse to the witness is the executor, administrator, heir-at-law, next of kin, surviving partner, or assignee of the deceased, nor where the witness acquired title to the cause of action immediately from the deceased, nor was she testifying for or against her husband, her husband being dead and not a party to the cause on either side. Such was the holding of this court in the case of Alexander v. Bobier, 65 Oklahoma, 166 Pac. 716, wherein it was said in paragraph 1 of the syllabus:

"In an action brought by an administrator, the widow and step daughter, neither being a party to the action, are competent witnesses to testify as to transactions and conversations had personally with the deceased. Such witnesses do not fall within the inhibitations of section 5049, Rev. Laws 1910; neither are they made incompetent on account of the interest that they might have in the result of the action."

The defendant's 5th specification of error is that:

"The court erred in refusing to admit and receive in evidence the testimony of the witness Theodore Graalman and others to show that Mrs. J. W. Bruton, or Bell Bruton, had a suit pending against the defendant town in said court for $5,000 damages claimed on account of personal injury received by her in the same transaction in which deceased met his death."

There is no merit in this contention. The party referred to was not called as a witness by either party, and the fact that she had a suit pending as stated was wholly immaterial, and the court properly excluded the testimony offered. 16 Cyc. 1063; 10 R. C. L., section 34, p. 886.

The defendant's 6th assignment is:

"The verdict and judgment are not sustained by sufficient evidence."

As we have seen, the plaintiff's petition sufficiently alleged the defendant's negligence, and that the same was the proximate cause of the injury. The defendant pleaded as a defense the contributory negligence of the deceased. Section 6, art. 23, of the Constitution of this state requires that the defense of contributory negligence as a question of fact, in all cases whatsoever, shall, at all times, be left to the jury, and the finding of the jury upon this defense is conclusive upon the courts. St. Louis & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156.

This court has universally held:

"Where there is competent evidence in the record reasonably tending to support the judgment appealed from, in the absence of prejudicial errors, such judgment will be affirmed.

Charvos v. New State Bank, 54 Okla. 255, 153 Pac. 849.

Also:

"In the trial of a disputed question of fact in the district court, the jury are the sole judges of the weight and credibility of the various witnesses, and the decision of the question of fact will not be disturbed by the Supreme Court, unless it is shown that they are in error as to such decision of fact, and this error be clearly pointed out." Silverwood v. Carpenter, 51 Okla. 745, 152 Pac. 381.

Also:

"Where there is evidence tending to support the verdict in an action at law, the Supreme Court will not weigh the evidence, and if it reasonably tends to support the verdict and judgment, they will not be disturbed." Sun Accident Co. v. Bunn, 51 Okla. 682, 152 Pac. 370; Pool v. Burger Bros., 56 Okla. 268 155 Pac. 1144; American Fidelity Co. v. Echols. 56 Okla. 228, 155 Pac. 1160

Also:

"If there is any evidence, including every reasonable inference which the jury could have drawn from the same, reasonably tending to support the verdict, the Supreme Court will not reverse a case for insufficient evidence." Oaks v. Samples, 57 Okla. 660, 157 Pac. 739; C. D. Osborne & Co. v. White, 54 Okla. 733, 154 Pac. 653

Also:

"The question of actionable negligence is ordinarily for the jury, and where there is evidence or inference that may be drawn therefrom, reasonably tending to support the findings of the jury that there was actionable negligence which was the proximate cause of injury suffered, the Supreme Court will not disturb such verdict." Midland Valley R. Co. v. Rippe, 61 Oklahoma, 161 Pac. 233.

Also:

"Where there is a conflict in the evidence and the issues determined by the jury under proper instruction and approved by the trial court, the Supreme Court will not disturb the verdict on the weight of the evidence." Packey v. Nickoll, 60 Oklahoma 12, 158 Pac. 593; Thompson v. Vaught, 61 Okla. 195, 160 Pac. 625; Wichita Falls & N. W. Ry. Co. v. Benton, 66 Oklahoma, 167 Pac. 633.

Also:

"Where the instructions fairly state the law and there is any evidence to support the verdict of the jury, on appeal the judgment will not be disturbed." State Bank of Westfield v. Kiser, 46 Okla. 180, 148 Pac. 685; Reed v. Scott, 60 Okla. 757, 151 Pac. 484.

Also in the case of St. L., I. M. & S. R. Co. v. Lewis, 39 Okla. 677, 136 Pac. 393, this court held that "the defense of contributory negligence must at all times be left to the jury, and that the verdict of the jury is conclusive upon such question."

Counsel of the defendant say in their brief:

"There is no dispute in this case that the deceased, J. O Warrington, was killed in Watonga, Oklahoma, on the 23rd day of July, A. D. 1914, by coming in contact with a telephone guy wire charged with electricity received from the electric wire owned and operated by the plaintiff in error, but to settle all dispute as to how and where it happened, and the circumstances surrounding said accident, both before and after the same, and to show the deceased's knowledge of electricity, etc., the evidence will be sufficiently abstracted to show these facts."

The other assignments of the defendant relate to the action of the court in giving certain instructions objected to and refusing to give certain instructions requested by the defendant.

We have examined these instructions in connection with an examination of the entire record, and from such examination it does not appear to us that there was a misdirection of the jury or any improper admission or objection of evidence or any error in any matter of pleading or procedure that has probably resulted in a miscarriage of justice or constitutes substantial violation of any constitutional or statutory right. In these circumstances this court is not authorized by law to set aside the judgment of the trial court or grant a new trial. Rev. Laws 1910, sec. 6005.

The trial court did not err in overruling the defendant's motion for a new trial. The judgment of the trial court is, therefore, affirmed.

OWEN, C. J., and RAINEY, PITCHFORD, HIGGINS, McNEILL, and BAILEY, JJ., concur.