FRY et ux. v. LONG BELL LBR. CO.

No. 31852. Nov. 6, 1945.

Rehearing Denied April 9, 1946.

*167 P. 2d 654.*

Kavanaugh Bush, G. Ellis Gable, and Charles P. Gotwals, Jr., all of Tulsa, for plaintiffs in error.

Frank Settle, Eugene O. Monnet, and Sam Clammer, all of Tulsa, for defendant in error.

DAVISON, J. This is an action to foreclose a materialman's lien. It is presented on appeal from the district court of Tulsa county where the Long Bell Lumber Company, as plaintiff, recovered judgment against the defendant L. L. Peterson for $2,525.98 and a further judgment to the effect that the amount recovered constituted a lien against certain real estate belonging to the defendants Robert G. Fry and Mrs. Robert G. Fry on money and bond posted to discharge the lien.

The defendants Robert G. Fry and Mrs. Robert G. Fry have appealed. They appear before this court as plaintiffs in error. However, the parties will be hereinafter referred to as they appeared in the trial court.

The defendants were the owners of certain real estate in the city of Tulsa,

Okla. On July 10, 1941, Mr. Fry entered into a written contract with L. L. Peterson whereby Peterson agreed to construct on the premises a house and other improvements for the contract price of $11,500. During the course of construction extra work and labor was performed and extra material acquired which was of a sufficient value to make the contract price $12,280.26.

In this action the defendants filed a cross-petition against their codefendant L. L. Peterson for damages connected with the construction of the improvements. This phase of the case was tried before a jury and resulted in a judgment in favor of the defendants for $917.50. This judgment operated to reduce the contract price to $11,362.76. Consolidated Cut Stone Co. v. Seidenbach, 181 Okla. 578, 75 P. 2d 442; 36 Am. Jur. 165, para. 269; 42 O. S. 1941 § 143.

There was, therefore, available for expenditure under the contract the sum of $11,362.76 which could be used in paying mechanic's and materialman's liens or lienable claims.

The cause between the plaintiff and defendants was tried to the court without the aid of a jury and resulted in a judgment for plaintiff for the full amount claimed.

It appears that various other purported mechanic and materialman lienholders accepted a reduction of 10 per cent from the total amount of their bills, but that the plaintiff refused to accept any reduction and the present litigation resulted when defendants refused to pay the full amount of plaintiff's claim. Plaintiff had properly and timely filed its lien and the defendants thereafter, for the purpose of discharging same, made the deposit of cash and posted the bond contemplated by 42 O. S. 1941 § 147.

In presenting the cause to us for review defendants first assert that the court erred in refusing to find that the bills for labor and material exceeded the contract price. In arguing this point defendants state that the net contract price after deducting the verdict for damages against the contractor is $11,362.76, and from said amount the sum of $2,825.05 which had theretofore been paid on labor claims should be deducted, thus leaving a net amount of $8,537.71 available to pay material claims. Defendants then state that various claims for materialmen, not including the claim of plaintiff, amounted to $6,883.31, and that said claims were settled at a discount of 10 per cent by a total payment to the various claimants of $6,281.84. The plaintiff argues that all materialmen's claims, including the plaintiff's claim, should be settled and paid on percentage of $9,409.29 into $8,537.71, or approximately a 10 per cent discount. Thus the only question to be determined on this particular phase of the case is whether plaintiff is entitled to the full amount of its proven and timely filed lien claim or whether the defendants, under the evidence in the case, and the law applicable thereto, are entitled to the 10 per cent reduction thereof.

The defendants rely on the case of Consolidated Cut Stone Co. v. Seidenbach, supra, for the reduction. Defendants argue that if the total amount of materialman claims exceeds the amount available to pay said claims, then the amount of the bills exceeds the contract price and the materialmen are only entitled to their prorata part, or the per cent which is the total amount of the materialmen claims divided into the amount available for the payment of materialmen claims. Defendants state that this was the method adopted by the holding in the Seidenbach Case and authorities cited therein. A review of that case and supporting authorities discloses that certain limitations were placed on such a rule. The Seidenbach Case, following the case of J. B. Klein Iron & Foundry Co. v. Mays & Co., 76 Okla. 177, 184 P. 577, is authority for the following rule:

"In an action against the owner of a building to enforce a subcontractor's lien, evidence of payments made by

the owner to the contractor, who in turn paid the money thus received to subcontractors, laborers and artisans during the 60 days within which they otherwise would have been entitled to file liens, is admissible; and where the cost exceeds the contract price, the owner is entitled to credit for such payments to the extent of the prorata amounts which the other subcontractors, etc., would have been entitled to if their liens had been filed."

The facts in the present case are not applicable to the Klein Case, supra, and by reason of the difference in the factual situation the above rule of law in the Klein Case is inapplicable here.

An examination of the record before us discloses that (with a few exceptions insufficient in amount to be material to this controversy) payment to materialmen had been made after 60 days from the date the last material was furnished or, payment having been made, without a showing when the material was last furnished. It therefore does not appear that the claims were paid within the 60-day period during which their owners could have filed their lien. In fact, the record in almost every instance shows the contrary. The record, therefore, shows that the liens were not perfected under 42 O. S. 1941 § 143, but does show that the time allowed for perfecting a lien under such statute had expired.

42 O. S. 1941 § 143, which relates to liens by or through subcontractors, provides:

"Any person who shall furnish any such material . . . as a subcontractor may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material . . . by filing with the clerk of the district court of the county in which the land is situated, within sixty days after the date upon which material was last furnished . . . under such subcontract, a statement, verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof. . . ."

It therefore follows that if the claim of a subcontractor is not paid within 60 days from the time the last labor was performed or the last material furnished, the claimant cannot establish his right to a lien, unless he has within 60 days after the last labor was performed or the last material furnished, properly and timely filed his lien statement as provided for by statute. Neves v. Mills, 74 Okla. 7, 176 P. 509; Walton Lumber Co. v. Cox et al., 29 Okla. 237, 116 P. 798.

In view of the foregoing reasoning it is obvious that the defendants in this case cannot claim credit on the contract price for material claims paid by them, because the payments were not shown to have been made within the 60-day period allowed subcontractors to file their lien statements.

The next and last complaint of the defendants is that:

"The court erred in refusing to permit Fry to reopen."

An April 16, 1943, Robert G. Fly filed a motion for leave to reopen the cause for the purpose of producing evidence to show that the mechanics and subcontractors paid by him had lienable claims. Thereafter, and on December 15, 1943, the motion was denied. The question of whether or not a cause should be reopened for the purpose of permitting the introduction of further evidence is one which rests in the sound judicial discretion of the trial court. Railway Express Agency v. Stephens, 183 Okla. 615, 83 P. 2d 858; Deems v. Milligan, 179 Okla. 25, 64 P. 2d 701; City of Weatherford v. Luton, 189 Okla. 438, 117 P. 2d 765.

In justification of the action of the trial court in refusing to permit the case at bar to be reopened for the purpose stated, it is proper to note that on one previous occasion prior to the filing of the motion of April 16, 1943, the court permitted Fry to reopen the case for the purpose of producing further evidence. This action of the trial court was objected to by plaintiff. Under this

order of the court, additional testimony was introduced and all available pertinent testimony should have been introduced at that time. The record does not disclose that the trial court abused its discretion in refusing to permit the case to be reopened.

Upon consideration of the record before us, we are of the opinion that the proceedings before the trial court were free from substantial error, and the judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, CORN, and ARNOLD, JJ., concur.